IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| **LARRY ALABRAN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Civ. Action No. 3:04CV935 |
| | ) | |
| **CAPITAL ONE BANK,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION

This matter is before the court on: (1) the Defendant's Motion for Summary Judgment (docket entry no. 28); (2) the Plaintiff's Motion for Partial Summary Judgment (docket entry no. 45); and (3) the Plaintiff's Motion to Strike Exhibits Proffered and Attached by Defendant in Support of it's Motion for Summary Judgment (docket entry no. 62).[1] For the reasons discussed herein, it is the judgment of the court that the Plaintiff's Motion for Partial Summary Judgment must be GRANTED and that the Defendant's countervailing motion for total dispositive relief as well as the Plaintiff's related motion to strike the exhibits submitted by the Defendant in support of its motion be DENIED, the latter motion of the Plaintiff being rendered moot by the court's resolution of the Defendant's motion.

### Standard of Review

Summary judgment is only to be granted when there is no genuine dispute as to any issue of material fact when all justifiable inferences are drawn in favor of the non-moving party and the movant is entitled to judgment as a matter of law. Celotex v. Catrett, 477 U.S. 317, 322-23

---

[1] There are also pending motions *in limine* by the Plaintiff that will be addressed in a separate opinion that will issue before trial proceedings.

(1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, unsupported conclusory allegations by the non-moving party are not enough to create a genuine dispute of material fact sufficient to withstand the granting of dispositive relief.  Celotex Corp., 477 U.S. at 328 (White, J., concurring).  In essence, the court must decide if the evidence, when viewed in the light most favorable to the non-moving party, "presents a sufficient disagreement to require submission to the [factfinder] or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

**Undisputed Facts and Reasonable Inferences**

The court deems the following to be the undisputed facts and reasonable inferences upon which the pending motions are to be resolved:[2]

1. Two credit card accounts were opened by the Defendant (Capital) regarding the Plaintiff, the first (opened in 1997) being in the joint names of the Plaintiff and his then-wife, and the second (opened in 2002) in the sole name of the Plaintiff. (Mem. Pts. & Auth. Supp. Def.'s Mot. Summ. J. (Def.'s Mem.), Undisp. Facts ¶¶ 1, 34, exs. G & N).

2. There is no application or other record available as to the first of the accounts and the signature in the name of the Plaintiff on the second was not executed by him as is conceded by the Defendant.  (Pl.'s Mem. Supp. Pl.'s Mot. Partial Summ. J. (Pl.'s Mem.), ex. 1 at 13, 23 (McFarland Dep.).[3]

---

[2] Although the Plaintiff contests many of the facts as alleged by the Defendant to be undisputed, the objections are based primarily on reasons of authenticity as opposed to substantive objection.  For example, the Plaintiff disputes the asserted undisputed fact that he personally received or was otherwise aware of the monthly statements before the divorce, but he does not dispute that they were sent to that address.  (*See e.g.*, Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. (Pl.'s Opp'n Memo.), ¶ 5 at 6).  The distinction does not make any difference in the court's ultimate resolution of the motion and the court will therefore consider the basic factual issue involved as being undisputed.

[3] Aside from a non-expert comparison of the subject signature on the second application that is available and known signatures of the Plaintiff that appear to be markedly different, counsel for the Defendant conceded at oral argument that the Defendant is not contending that

3.     The Plaintiff was an authorized user of at least one of the credit cards and used it on occasion.  (Def.'s Mem., Undisp. Facts ¶ 5, ex. B); (Pl.'s Resp. Def. First Req. Admis. no. 28); (Pl.'s Mem., ex. 2 at 77-78 (Pl.'s Dep.)).

4.     Capital mailed monthly billing statements to the marital address of the Plaintiff and his wife over the some five year period of the account (January 1998 to April 2003).  (Def.'s Mem., Undisp. Facts ¶ 6-9, ex. F).

5.     The Plaintiff made two payments on the account, one at the request of his wife and the second in an effort to resolve the developing dispute with Capital after he asserts he first became aware of a potential claim against him.  (Pl.'s Mem., ex. 2 at 127-128, 135 (Pl.'s Dep.), exs. 3-4).

6.     All remaining payments (some sixty-two) were made by Plaintiff's wife on both a separate checking account of the wife or a joint checking account with the Plaintiff.  (Def.'s Mem., Undisp. Facts ¶¶ 6-10; Pl.'s Mem., Undisp. Facts ¶¶ 14-16).

7.     Capital does not hold an authorized user responsible for the ensuing indebtedness resulting from the authorized user's use of a credit card.  (Pl.'s Mem., ex. 5 at 58 ("An authorized user is a consumer who's authorized to use a credit card, but he cannot make any major changes; he's not responsible for the debt.") (Dep. of Def. R. 30(b)(6) witness)).

8.     Divorce proceedings were initiated between the Plaintiff and his wife (who admitted in deposition that she "may have" applied for a Capital credit card) in March 2003.  (Def.'s Mem., Undisp. Facts ¶ 12, ex. I).

9.     The joint status of the credit card account remained unchanged during the Plaintiff and wife's estrangement and payments continued to be made.  (Def.'s Mem., Undisp. Facts ¶ 13, ex. F).

10.     Plaintiff notified Capital in May and June 2003 that he disputed his responsibility for any indebtedness on the account(s).  (Def.'s Mem., Undisp. Facts ¶¶ 16, 54, exs. K & Q).

11.     Capital instituted a fraud investigation in response to each dispute and suspended further use of each account pending completion of the investigations.  (Def.'s Mem., Undisp. Facts, ¶¶ 17, 55, exs. C & L).

---

the Plaintiff signed the application.  (Pl.'s Mem., exs. 3, 4).

12. Upon confirming that payments had been received on the account from a joint checking account bearing the Plaintiff and wife's names and personal identifying information, including the same residence address, Capital concluded each fraud investigation, rebilled the disputed charges, and notified the Plaintiff that he would be responsible for the indebtedness unless his wife signed a letter of sole responsibility. (Def.'s Mem., Undisp. Facts, ¶¶ 19-22, 56-59, exs. L & Q).

13. Plaintiff's wife declined to sign a letter of responsibility. (Def.'s Mem., Undisp. Facts ¶¶ 22, 60, exs. L & Q).

14. Capital also received three automated customer dispute verification (ACDV) requests on each account from the three credit reporting agencies (Equifax, Experian, and TransUnion) (CRAs) from May through September 2003 describing the dispute as "Not his/hers" and asking the Defendant to "Provide complete ID." (Def.'s Mem., Undisp. Facts ¶¶ 23-25, 27-28, 31-32, 61-63, 65-66, 68-69, exs. M & R).

15. In each instance, Capital reviewed its account records, noted that payments had been made on the accounts from checking accounts with the Plaintiff's name and the same billing address on the payment checks, and verified the account information back to the CRAs.[4] (Def.'s Mem., Undisp. Facts ¶¶ 26, 29, 33, 57, 64, 67, 70).

16. When reviewing an ACDV notice, Capital did not review any other records it may have maintained on the consumer, even though it had to know that the dispute was based on account information it had forwarded. (Pl.'s Opp'n Mem. ¶ 10 at 8-9, citing Disc. Deps.).

17. Although it is fair to infer that the Plaintiff reaped some benefit from the use of the subject credit cards, there is no evidence that any charge was for a medical emergency or other medical necessity of the spouse for which Plaintiff could be held liable under any "necessaries" doctrine. *See* Schilling v. Bedford Co. Memorial Hosp., Inc., 225 Va. 539 (Va. 1983) (holding that the necessaries doctrine, whereby a husband is responsible for necessaries provided to the spouse, is unconstitutional because it is based on a gender classification that is not justified by any important governmental objective).

18. There is no evidence that the Plaintiff was aware that the credit card indebtedness was being reported on his credit report before the spring of 2003 when he first

---

[4] In one instance, the Defendant corrected the account information to reflect a new address for the Plaintiff, and in another, reinstated the account after it had been initially deleted as the result of a "data entry error." (Def.'s Mem., Undisp. Facts ¶¶ 30, 33).

disputed the obligations.

## Plaintiff's Claims

The Plaintiff asserts in his Amended Complaint (Complaint) a claim for common law defamation for Capital's willful publication of the allegedly false information that the Plaintiff was liable for the credit card indebtedness and a claim for violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 s-2(b), in reporting such allegedly false representation, failing to reasonably investigate the Plaintiff's dispute of his liability for the indebtedness, and its failure to correctly report the results of any investigation to the CRAs. (Compl.). As a result of such allegedly willful or negligent conduct, the Plaintiff asserts that he suffered damage to his credit status; lost the ability to purchase and benefit from a more favorable credit rating; and incurred various non-economic damages, including mental and emotional pain, anguish, humiliation, and embarrassment so as to justify an award of actual, statutory, and punitive damages, plus attorney's fees, costs, and interest. Id.

## Analysis

The court deems it appropriate to first consider the Plaintiff's motion to strike the exhibits offered by the Defendant in support of its motion for dispositive relief and then to consider the Defendant's motion, with final consideration of the Plaintiff's reciprocal motion for partial summary relief.

*Plaintiff's Motion to Strike*

The Plaintiff moves to exclude several of the exhibits (exhibits C, D, E, F, G, N, O, and S) that the Defendant has offered in support of its motion for summary judgment on the essential ground that the documentation presented is not properly authenticated. (Pl.'s Motion Strike Exs.

Proffer'd & Attach'd Supp. Mot. Summ. J. (Pl.'s Mot. Strike).  The exhibits in question are copies of account statements (exs. C and E); credit reports (ex. D); checks received in payment (ex. F); account action summaries (ex. G); credit reporting agency (CRA) dispute notices (ex. N); a deposition testimony excerpt (ex. O); and a credit card application with records of action taken in regard to the application (ex. S).  The Plaintiff argues that the Defendant has failed to satisfy the governing procedural rule requiring authentication "either by affidavit, deposition or on some other evidentiary basis, such as admission of a party":

> To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.  Thus, a letter submitted for consideration under Rule 56(e) must be attached to an affidavit and authenticated by its author in the affidavit or a deposition.

(Pl.'s Mot. Strike at 3-4) (quoting Federal Practice & Procedure, Wright, Miller & Kane, § 2722). The Plaintiff further complains that even if such authentication was provided, it would not necessarily protect against the unreliability of, for example, the double hearsay contained in the record of charges made on the card.  (Id. at 4-5 ("Even if Capital One had authenticated such documents, the best it could argue was that its records showed that a specific merchant had reported to it that another person had made a charge on the account.")).

The Defendant responds to the effect that it has now authenticated the records by certification of a custodian of the business records involved that the Defendant argues should be considered by the court because the record is not yet closed (to which Plaintiff objects for not having been filed in support of the motion initially); that the Plaintiff can hardly complain because he is relying on some of the same records, *e.g.*, check payments; and that the Plaintiff

cannot claim surprise or prejudice because Plaintiff's counsel has had such documents since early production by Defendant. (Def.'s Mem. Opp'n Pl.'s Mot. Strike Summ. J. Exs.).

Aside from the fact that most of the records are internal business records of the Defendant that are not *per se* inadmissible on their face[5] and can be readily authenticated by an appropriate witness, if they are not already by the supplemental affidavit provided, and aside from the fact that the Plaintiff offers at least one of them (ex. F) in support of his own motion, the issue is rendered moot because the court holds in granting the Plaintiff's motion for partial summary judgment that the undisputed evidence establishes the Plaintiff to have been, at most, only an authorized user of the credit card or cards involved and not liable for the subject indebtedness. Therefore, where the exhibits in question would only be relevant if the court concluded he would be liable, their inclusion in the record is of no significance. Nevertheless, the court exercises its discretion to deny the motion as moot (as opposed to granting the motion and striking the exhibits from the record) in order to allow the materials to be considered on possible appellate review.

*Defendant's Motion for Summary Judgment*

Reduced to its essence, Capital argues that it is entitled to dispositive relief on all claims because it accurately reported the status of the two accounts to the CRAs based on repeated investigations that it contends were reasonable and in full compliance with all statutory and/or regulatory requirements; that such efforts rebut any assertion of willful misconduct, reckless disregard of the truth, or any degree of negligence so as to sustain a claim for defamation or punitive damages; and, finally, the pendant claim for defamation is pre-empted by the FCRA in

---

[5]Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1551 (9th Cir. 1990).

any event.  (Def.'s Mem.; Supp'l Mem. Pts. & Auth. Supp. Def.'s Mot. Summ. J. (Def.'s Supp'l Mem.)).  Capital bases its position on what it asserts to be the relevant, undisputed facts, namely, that the Plaintiff "does not deny opening [the] joint credit card account";[6] that Capital received multiple payments "on these accounts from checking accounts that bear Larry Alabran's name, address, social security number, and telephone number"; that Capital sent monthly statements to the address listed on the checks bearing the names of Plaintiff and his wife; that the Plaintiff admits to having made "multiple" payments himself on the account that was maintained in his name; that the Plaintiff made purchases on the accounts; and that it is at least reasonable to infer that the Plaintiff benefitted from goods and services purchased through use of the cards.  Id.

The FCRA provides what has been referred to as qualified immunity for a furnisher such as Capital that had a reasonable basis to conclude its reporting procedures were accurate:

> . . . no consumer may bring any action . . . in the nature of defamation . . . based in whole or in part on the report, except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).

The Plaintiff's defamation claim would therefore be pre-empted pursuant to § 1681h(e) in the *absence* of an allegation and proof at trial of "'such gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of the plaintiff.'"  Preston v. Land, 220 Va. 118, 121 (Va. 1979) (quoting Chesapeake Ferry Co. v. Hudgins, 155 Va. 874, 902 (1931)  (the controlling definition of the relevant element of defamation); *see also* Jeffery v. Trans Union, LLC, 273 F. Supp. 2d 725, 728 (E.D. Va. 2003) (citing Beattie v. NationsCredit Fin. Servs.

---

[6]In fact, the Plaintiff emphatically denies even knowing the joint credit card obligation existed, let alone having opened it.  (Pl.'s Opp'n Mem. at 5-6 (citing disc. excerpts)).

Corp., No. 02-1744, 2003 WL 21213703 (4th Cir. May 27, 2003) (affirming the granting of summary judgment as to a state defamation claim for lack of evidence of wilfulness sufficient to avoid preemption of § 1681h(e)); Swecker v. Trans Union Corp., 31 F. Supp. 2d 536, 540 (E.D. Va. 1998) ("the explicit language of the FCRA [§ 1681h(e)] makes clear that the statute does not completely preempt all state causes of action for defamation"); and Rule v. Ford Receivables, Inc., 36 F. Supp. 2d 335 (S.D. W. Va. 1999) (rejecting an argument that the FCRA completely preempts state negligence claim). The undisputed facts here, however, with all reasonable inferences being drawn in favor of the non-moving party (the Plaintiff), support a potential jury determination that the Defendant's actions were, at the very least, grossly indifferent and reckless. (Findings ¶¶ 12, 15). Capital only checked personal identifier information, and its own corporate representative acknowledged in a Rule 30(b)(6) deposition, correctly and necessarily, that an authorized user is *not* liable for the indebtedness. (Findings, ¶¶ 7, 12, 15). Dispositive relief is therefore precluded as to the claim of defamation in regard to whether the reporting of the Plaintiff being liable for the indebtedness is true or false, because it was false as a matter of law.[7] The only remaining issue is whether the element of willfulness/recklessness can be established, and that is for a jury to determine.

      The Defendant also asserts that it is entitled to "immunity" pursuant to § 1681t(b)(1)(F). The statute provides, in pertinent part, that *no state* shall enact laws concerning "the responsibilities of persons who furnish information to consumer reporting agencies" regarding the multiple responsibilities of the federal statutory scheme (15 U.S.C. § 1681 s-2) for furnishers

---

[7] Thus, the Plaintiff's countervailing argument for partial summary judgment must be granted as to the issue of whether the information reported by Capital was accurate.

to provide correct, updated information, and to respond to consumer disputes with reasonable efforts that include adequate notice once the furnisher has received notice of a consumer dispute from a CRA. (Def.'s Mem. at 17-18; Def.'s Supp'l Mem. at 6-7). A conflict has developed among various courts as to how to interpret and apply the two statutory provisions. The debate is thoroughly analyzed in Jeffery v. Trans Union, *supra*, from this court, as well as decisions from other circuits. *See, e.g.*, Malm v. Household Bank, N.A., No. 03-4340 2004 U.S. Dist. LEXIS 12981 (D. Minn. July 7, 2004). This court adopts the reasoning and holding of Jeffery that "the plain language of Section 1681t . . . supports the conclusion that Section 1681t(b)(1)(F) does not apply to state tort claims." Jeffery v. Trans Union, 273 F. Supp. 2d at 728. Simply put, on its face, the statutory language prohibits a state from pursuing an independent statutory path in such matters without precluding the pursuit of a pendant state tort claim.

As to the merits of Plaintiff's FCRA claims, Capital argues that it cannot be held liable for any violation, as a matter of law, because it was only obliged to respond in a reasonable way to any inquiry from a CRA and that it did so. (Def.'s Mem. at 19-22; Def.'s Supp'l Mem. at 7-9).[8] Specifically, Capital asserts that it received multiple ACDV notices from the CRAs and that all of them reported only an identity dispute ("Not his/hers. Provide complete ID."), not an identity theft or fraud alert. (Def.'s Supp'l Mem. at 7-9). As such, Capital asserts it was only required to confirm personal identifiers in the account, that is, "whether the Larry Alabran who

---

[8]The Defendant correctly argues that no claim exists as to any violation of § 1681 s-2(a)(3) for failure of Capital to notify the CRAs of the Plaintiff's dispute because the provision can only be enforced by certain governmental entities, but the Plaintiff responds that he is pursuing claims under § 1681 s-2(b) that does not preclude a private cause of action as is apparently acknowledged by the Defendant's arguments regarding any § (b) violation. (Def.'s Mem. at 20-22).

owned these accounts was the same Larry Alabran who was now disputing them." (Id. at 8). Accordingly, Capital reviewed such personal identifiers as name, social security number, address, and mother's maiden name and confirmed:

> "to a sufficient degree of confidence that permitted Capital One Bank to conclude that the Larry Alabran who had used and enjoyed these credit card accounts for more than six years during the course of his marriage to Mersine, was the same Larry Alabran who was now disputing these credit card accounts for the first time, shortly after he filed for divorce.

Id. at 9.

In support of its position, the Defendant urges the court to adopt the holdings from other circuits involving the same CRA notification, "Not his/hers. Provide complete ID.," in which those courts (district and appellate levels) found that such notice was too "scant" or otherwise insufficient to require the furnisher to do anything more than Capital did in the present case. Specifically, the Defendant relies on Westra v. Credit Control of Pinellas, 409 F.3d 825 (7th Cir. 2005), and Malm v. Household Bank, N.A., *supra*, in which both courts held that the scope of "reasonableness" for the required investigation by a furnisher in response to a notice of a consumer's dispute from a CRA is defined and confined by the information provided in the notification, and that the simple indication that the consumer was disputing a charge, without any indication of possible fraud or identity theft, did not require the furnisher to do more than confirm the identity of the protesting consumer.

At the same time, the Plaintiff asserts that the Fourth Circuit opinion in Johnson v. MBNA America Bank, N.A., 357 F.3d 426, 431 (4th Cir. 2004), controls whereby the court held "that §1681 s-2(b)(1) requires creditors, after receiving notice of a consumer dispute from a

11

credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified," and that the factfinder (jury) had a basis to find that the furnisher's efforts, which the Plaintiff asserts mirror those of Capital here, were unreasonable. The multiple notifications from different CRAs in Johnson were "CONSUMER STATES BELONGS TO HUSBAND ONLY" and "WAS NEVER A SIGNER ON ACCOUNT. WAS AN AUTHORIZED USER." Id. at 419. The court in Johnson interpreted such information as indicating the consumer was disputing that she was a co-obligor on the account so that mere confirmation of the identity of the consumer without reference to additional information available to the furnisher in its own records would – and did – form a sufficient basis for the jury to have found the furnisher's investigation to be unreasonable. Id. at 431-432.

In the present case, Capital argues that Johnson is not controlling because the information provided by the CRA notification in Johnson was quantatively different where the furnisher was clearly put on notice that the dispute involved more than the consumer claiming that he/she was not the same person who was obligated on the account. (Def.'s Mem. at 21-22). However, aside from the fact that Westra and Malm are not controlling for being from other circuits, they are distinguishable from Johnson and this case for a different reason, and with a different result, than urged by Capital. Specifically, in Johnson and here, the Plaintiff had lodged the dispute directly with the furnisher involved as well as the CRAs, and although the furnishers did not have the obligation under § 1681 s-2(b)(1) to conduct a "reasonable" investigation until they received notice from a CRA, they maintained the specifics of the dispute in their records that would have detailed the problem *if* the investigation reached beyond simply confirming identity. The issue in both Westra and Malm was that of identification, that is, whether the person making the dispute

was the same person who was obligated on the account, *i.e*., ID fraud.[9] In both Johnson and the present case, however, the dispute concerned whether the person making the dispute was an authorized user and, if so, whether they were obligated for the indebtedness.

In addition, and particular to this case of whether dispositive relief is available to Capital, its own Rule 30(b)(6) witness testified in deposition that Capital had received the same dispute code over time in regard to consumer disputes in which Capital understood that the consumer, like the Plaintiff here, denied the obligation because they were only an authorized user versus not being the person who had used the card. (Pl.'s Mem., ex. 5A at 22 (Dep. of Sarah Cheek). Nevertheless, a Capital employee responding to an ACDV notice of consumer dispute would not conduct any investigation under any circumstances of even Capital's own internal files beyond confirming identity which allows for the reasonable inference that no further investigation would be undertaken even if there was an indication of fraud. Id., ex. 5A at 24; *see also* ex. 4A at 69 (Dep. of Karen Crews).

In both Westra and Malm, the consumer lodged his/her dispute with only the CRA (or, as in Malm, with a successor creditor/furnisher) such that the furnisher involved did not have any additional information at its disposal to at least clarify what those courts concluded to be insufficient notification. Here, Capital's own witness has confirmed in discovery that the notification of "Not his/hers" indicated that the consumer disputed that he/she was a co-obligor on the account, the same significance attached by the court to the arguably more specific notice

---

[9]Even though Malm involved a scenario similar to this case with estranged spouses, in Malm, both parties reported to the furnisher that the plaintiff "should not be listed on the account." Malm at *3. As such, the issue involved more than an identification confirmation, but such information was not provided to the CRAs.

in Johnson. As such, dispositive relief is precluded where there exists a genuine issue of disputed material fact as to whether, under the particular facts and circumstances of this case, Capital usurped any obligation to conduct a reasonable investigation upon receipt of the CRA notices because it had at least clarifying information available.

*Plaintiff's Motion for Partial Summary Judgment*

The Plaintiff moves for partial summary judgment on the sole issue of whether he was obligated on the subject indebtedness or not as that is relevant to the defamation claim, and whether Capital forwarded inaccurate information to the CRAs so as to be in potential violation of the FCRA. Capital initially responds by objecting to the Plaintiff's filing of the motion three days late. (Mem. Pts. & Auth. Supp. Def.'s Mot. Strike Pl.'s Mot. Partial Sum. J.). The Plaintiff responds that the Defendant has not been prejudiced by the minimal delay if, for no other reason, than the issue of the accuracy of the information provided by Capital was thoroughly explored in conjunction with the Defendant's own motion for dispositive relief. The court concurs that there are no disputed material facts remaining after resolution of the Defendant's motion concerning whether the Plaintiff was or was not obligated on the subject indebtedness[10] such that the resolution of the issue of the accuracy of the information is a question of law that would have to be resolved by the court anyway at some point. Accordingly, the motion will be entertained and GRANTED for the reasons already discussed.

## CONCLUSION

The undisputed facts establish that the Plaintiff was an authorized user of the subject

---

[10] Because the Defendant cannot produce the application for the first card and does not contend that the Plaintiff signed the second one as a co-obligor. (Findings ¶ 2).

accounts, but not obligated for the indebtedness. Therefore, the information provided to the credit bureaus by Capital that he was a co-obligor was inaccurate. Moreover, genuine issues of disputed material fact exist as to whether Capital's reporting of the inaccurate information was done with such a degree of recklessness and/or negligence as to support the remaining elements of the defamation claim. In addition, genuine issues of material fact exist as to whether Capital conducted a reasonable investigation upon being notified by the credit bureaus of the Plaintiff's dispute. The Plaintiff's motion for partial summary judgment must therefore be GRANTED and the Defendant's motion for total dispositive relief DENIED, the Plaintiff's motion to strike the Defendant's supporting exhibits being DENIED as moot for the reasons stated.

      An appropriate Order shall issue.

                                                             /s/
                                           Dennis W. Dohnal
                                           United States Magistrate Judge

Dated:  12/7/05